**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **RAQUEL GORDON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Case No. 1:06cv861 |
| | ) |
| **CARLOS GUTIERREZ, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

<u>**ORDER**</u>

Plaintiff Raquel Gordon, proceeding *pro se*,[1] alleges twenty four causes of action arising out of her employment with, and termination from, the United States Patent and Trademark Office ("USPTO"). She alleges she was discriminated against on the basis of race, color, and sex, and in retaliation for having filed a formal complaint with the Equal Employment Opportunity Commission, as well as subjected to a hostile work environment, all in violation of Title VII, 42 U.S.C. § 2000e *et seq*. For good measure, plaintiff also alleges she was subjected to retaliation for protected whistleblower activities, and various and sundry common law torts, including violations of privacy,[2] deceit, misrepresentation, libel, slander, tortious interference

---

[1]Plaintiff represents that she is an attorney, a law school graduate, and a member a neighboring state's bar. As such, she is not entitled to the liberal construction of pleadings ordinarily afforded *pro se* litigants. *See e.g. Smith v. Plati,* 258 F.3d 1167, 1174 n.6 (10th Cir. 2001); *Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977); *Grossman v. Motley*, 1987 WL 15268 at *2 n.1 (E.D.N.Y. 1987).

[2]It is unclear from the complaint and moving papers whether plaintiff asserts violations of the Privacy Act, 5 U.S.C. § 552a, or one or more of the four common law privacy torts. *See Restatement (Second) of Torts*, § 652A(2) (recognizing four invasion of privacy torts: intrusion upon seclusion, appropriation of a name or likeness, unreasonable publicity, and false light). The analysis proceeds on the assumption that she seeks to assert both the statutory and common law claims. In any event, as discussed *infra* in Sections II and III, both types of claims fail because

with contract, negligent and intentional infliction of emotional distress, negligence, and abuse of process. The named defendants are Secretary of Commerce Carlos Gutierrez in his official capacity, and four USPTO employees who are plaintiff's former supervisors: Howard Goldberg, Margaret Focarino, Nancy Le, and John Barlow, in their individual capacities.

Now ripe for disposition is a motion by the United States pursuant to Rule 12(b)(1) and 12(b)(6), Fed.. R. Civ. P., (i) to dismiss all claims against the individual defendants, (ii) to dismiss for lack of subject matter jurisdiction all claims against the official defendant except the Title VII claim, and (iii) to dismiss all Title VII claims except those relating to plaintiff's treatment by John Barlow. For the reasons that follow, the motion must be granted.

## I. Facts[3]

Plaintiff, who is African-American, was employed as a patent examiner in the USPTO at all times pertinent here until she was terminated July 13, 2005. The discrimination she complains of allegedly began in 1997, when she developed a social relationship with Nancy Le, then her supervisor. In 1998, after the two became friends, Ms. Le repeatedly pestered plaintiff to have sex with Ms. Le's husband. Ms. Le's husband allegedly made similar requests to plaintiff via telephone. When plaintiff refused these solicitations, Ms. Le began reviewing her work at the USPTO negatively and generally treating her differently from other patent examiners. This alleged disparate treatment included (i) negative reviews, (ii) sending plaintiff on time-consuming "wild goose chases," (iii) delayed pay grade increases, and (iv) denial of training

---

they arise out of plaintiff's federal employment are preempted by the Civil Service Reform Act.

[3]The facts stated herein are derived from the complaint and presumed to be true, as is appropriate when considering a motion to dismiss. *Westmoreland v. Brown*, 883 F.Supp. 67, 70 (E.D. Va. 1995).

opportunities made available to others.

Plaintiff reported Le's inappropriate and unwelcome sexual advances to defendant Focarino and requested a transfer to another supervisor. This request was granted and, in October 1998, she was transferred to a new supervisor, Ben Fuller, who was eventually replaced by defendant John Barlow. Shortly thereafter, Barlow allegedly also began treating her in a discriminatory fashion. More specifically, she alleges Barlow undermined plaintiff's production and denied her opportunities for advancement that were made available to more junior examiners who were white and/or male. She also alleges that Barlow subjected her to disparate treatment by (i) assigning plaintiff cases outside of her area of expertise, (ii) removing cases from plaintiff's docket to lessen her opportunities for advancement, (iii) precluding plaintiff from "classifying" applications (a process that helped determine to whom they were assigned) or permitting her to classify only on terms substantially different from her junior white male co-workers, (iv) maintaining a "secret docket" of cases on which plaintiff was not permitted to work, (v) reviewing her work improperly, (vi) unfairly singling her out for disciplinary counseling, and (vii) granting her lower bonuses and giving her less favorable evaluations than those given to similarly situated white males. Plaintiff contends that Barlow's disparate treatment of her was fueled in part by Le's animosity towards plaintiff. She allegedly discussed Barlow's and Le's treatment of her with Focarino and Goldberg, her second level supervisors.

Plaintiff contacted an EEO counselor on March 16, 2001, and thereafter, on May 25, 2001, she filed a complaint with the Equal Employment Opportunity Commission complaining of the conduct alleged here. The administrative law judge granted summary judgment for the

government,[4] and plaintiff now seeks *de novo* review.

As a result of these facts, plaintiff alleges she was discriminated against on the basis of race, color, sex, and in retaliation for having filed a formal Equal Employment Opportunity administrative complaint. She also asserts numerous causes of action under the Federal Tort Claims Act[5] ("FTCA"), and other federal statutes.

## II.

The standard for disposition of a dismissal motion is well settled: A motion to dismiss may be granted only if it is evident that plaintiff can prove no set of facts entitling her to relief, assuming the facts pled in the complaint are true and drawing all reasonable inferences in plaintiff's favor. *Westmoreland v. Brown*, 883 F.Supp. 67, 70 (E.D. Va. 1995).

The government first moves to dismiss all actions against the individual defendants,[6] arguing that a federal employee may not sue her supervisors in their individual capacities based on claims arising out of her employment. This argument is well taken.

First, plaintiff's tort claims against the individual defendants, while styled as FTCA violations, fail to state a valid claim under that statute. The FTCA provides that the United States is the proper defendant when suing for injuries resulting from the negligence of federal employees on the job. Specifically, the FTCA states that

---

[4] Plaintiff does not allege she received a right to sue letter as a result of this adverse determination, and no such letter appears in the current record.

[5] 28 U.S.C. §§ 1346, 1402, 2401-02, 2411-12, 2671 *et seq*.

[6] Because the complaint fails to specify which claims are asserted against which defendants, the analysis necessarily proceeds on the assumption that all claims are asserted against all defendants.

>the remedy against the United States [under the FTCA] for injury or loss of property . . . resulting from the negligent or wrongful act or omission of a government employee while acting within the scope of employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim.

28 U.S.C. § 2679(b). In other words, when the FTCA waives sovereign immunity with respect to a particular claim, the United States is the sole proper defendant and no action lies against individual employees. Therefore, the FTCA negligence claims against the individual defendants must be dismissed.

The remaining intentional tort claims merit the same fate. The FTCA's "intentional tort exception" provides that sovereign immunity is not waived for, *inter alia*, claims of abuse of process, libel, slander, misrepresentation, deceit, or tortious interference with contract, all of which plaintiff asserts. 28 U.S.C. § 2680(h). Thus, these intentional tort claims may not proceed against the sovereign. Nor may they proceed against the individual defendants. Because these claims arise out of plaintiff's employment, they fail as a matter of law whether labeled as FTCA or common law claims because the Civil Service Reform Act[7] ("CSRA") "provides the exclusive remedy for employment-related tort claims [of a federal employee]." *Brown v. Hicks*, 929 F.Supp. 1184, 1189 (E.D.Ark. 1996).[8] *See also Brown v. Hicks, supra*; *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000) (CSRA precludes both *Bivens* actions and statutory claims arising out of federal employment relationship); *Ferris v. American Federation of Government Employees*, 98 F.Supp.2d 64, 68 (D.Me. 2000) (CSRA preempts state common law claims

---

[7]5 U.S.C. § 1201 *et seq.*

[8]This is also a sufficient reason to dismiss the negligence claims against the individual defendants, in addition to the fact that they are barred by the FTCA.

against individual federal employees for, *inter alia*, intentional infliction of emotional distress, defamation, and tortious interference with contract). Moreover, these causes of action are preempted even if the CSRA remedies are more limited than the remedies that would otherwise be available under a more general statutory scheme. *See Orsay v. U.S. Dep't. of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002). Thus, since plaintiff's FTCA or common law intentional tort claims arise entirely out of her employment at the USPTO, they must be dismissed, both as against the individual and the official defendants.[9] *Accord Nguyen v. U.S. Dep't of Defense*, 39 F.3d 1178 (4th Cir. 1994) (a plaintiff may not "avoid the CSRA by cloaking his lawsuit in the guise of an FTCA action") (internal citations omitted).

The CSRA, however, does not preempt claims arising under Title VII or the Equal Pay Act ("EPA"). 5 U.S.C. § 2302(d)(1) (Title VII); § 2302(d)(3) (Equal Pay Act). *See also Wilson v. Harvey*, 156 Fed. Appx. 55 n.4 (10th Cir. 2005) (citing cases). Nonetheless, the Title VII

---

[9]Even were they not preempted by the CSRA, plaintiff's FTCA claims against the United States must be dismissed because plaintiff did not exhaust her administrative remedies and because at least some of the claims are time-barred. Any FTCA claims not covered by the CSRA must be presented to the PTO, which then has 6 months to consider them. 28 U.S.C. § 2675(a) ("an action against the United States shall not be instituted unless claimant shall have first presented the claim to the appropriate agency and his claim shall have been finally denied by the agency in writing."). There is no allegation that any of plaintiff's FTCA claims were presented as such to the USPTO for exhaustion. Moreover, many of plaintiff's claims are likely time-barred. Some of the claims may have accrued as early as 1998, while some may have accrued as late as 2005. Therefore, some of the claims are likely untimely, as tort claims against the US are barred unless presented to agency within two years after the claim accrues, or unless action is begun within six months of notice of final denial of claim by agency. *See* 28 U.S.C. § 2401(b). This time limit is jurisdictional, and though it is subject to equitable tolling, *Schmidt v. United States*, 498 U.S. 1077 (1991), *vacating* 901 F.2d 680 (8th Cir. 1990), *on remand* 933 F.2d 639 (8th Cir. 1991), plaintiff has alleged no factual basis to establish equitable tolling, and the failure to do so defeats any claim for equitable tolling. *See* infra note 9. Since no basis for a tort claim other than plaintiff's employment has been alleged, however, all the tort claims are preempted by the CRSA, and there is no need to decide precisely which ones are untimely or unexhausted.

claims against the individual defendants must be dismissed, as it is well-settled law that individual federal employees are not amenable to suit under Title VII. *See e.g. Campbell v. Dep't of Navy*, 894 F.2d 401 (table), 1990 WL 2203 (4th Cir. 1990) (stating that the "head of the department is the proper defendant" under § 2000e-16); *Stoll v. Principi*, 449 F.3d 263, 265 n.2 (1st Cir. 2006); *Nichols v. Agency For Int'l Development*, 18 F. Supp. 2d 1, 3 (D.D.C. 1998) ("the only proper defendant in a Title VII suit . . . is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired") (citing *Hackley v. Roudebush*, 520 F. 2d 108, 115 n.17 (D.C. Cir. 1975)) (internal quotation marks omitted); *King v. Dalton*, 895 F.Supp. 831, 844 (E.D.Va. 1995) (citing other cases). Only defendant Gutierrez is a proper defendant with respect to the Title VII claims.

Plaintiff's EPA claim must also be dismissed. The government asserts that plaintiff's EPA claim may also only be brought against defendant Gutierrez in his official capacity, and while relevant precedent and statutory text suggest otherwise,[10] this question need not be resolved because the instant EPA claim is untimely. The EPA has a 3 year statute of limitations for

---

[10] The Fair Labor Standards Act (of which the EPA is a component) provides that "any employer who violates the provisions of section 206 shall be liable to the employee affected" and that "an action to recover the liability prescribed. . . may be maintained against any employer (including a public agency) in any federal or state court of competent jurisdiction . . .". Thus, liability attaches only for "employers" who violate the EPA. The statute further defines "employers" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). While this language specifically includes agencies as employers, it does not explicitly exclude agency heads or mid-level supervisors as "employers." Indeed, the breadth of § 203(d) suggests that individual defendants may be amenable to suit, depending on the facts of each case and the degree of each individual defendant's responsibilities and authority. Decisional law has also held open the possibility of Equal Pay Act suits against individual federal employees. *See Weiss v. Marsh*, 543 F. Supp. 1115, 1118 (M.D. Ala. 1981) (individual Army employees may be proper defendants in Equal Pay Act suit); *Mirza v. Dep't of Treasury by and through Bentsen*, 1994 WL 30551 (N.D.Ill. 1994) (Treasury officials).

willful violations and a 2 year statute of limitations for other violations. 29 U.S.C. § 255(a). The government contends, and plaintiff has not contested, that plaintiff's EPA claim accrued in 2001. This suit was filed in 2005. Hence, plaintiff's EPA claim is time-barred.[11]

Plaintiff's Privacy Act claims against the individual defendants must also be dismissed. The text of the Privacy Act authorizes suit against the offending agency, not against individual federal employees.[12] Moreover, courts have consistently declined to imply a *Bivens*-style right of action against individual officers for conduct that would be actionable under the Privacy Act. *See Patterson v. FBI*, 705 F. Supp. 1033, 1045 n.16 (D.N.J. 1989), *aff'd* 893 F. 2d 595 (3rd Cir.), *cert. denied,* 498 U.S. 812 (1990); *Downie v. City of Middleburg* Heights, 301 F.3d 688, 698 (6th Cir. 2002); *Williams v. Dept. of Veterans Affairs*, 879 F.Supp. 578, 585-88 (E.D.Va. 1995) (*dictum*) (citing cases). No reason has been presented here to depart from this sensible line of authority. Accordingly, the Privacy Act claim against the individual defendants must be dismissed.

---

[11]Plaintiff conclusorily asserts she is entitled to equitable tolling of any applicable statute of limitations. Because she has not alleged a factual basis for equitable tolling, she is not entitled to it. *See Kokotis v. U.S. Postal* Service, 223 F.3d 275, 280-81 (4th Cir. 2000) (equitable tolling inappropriate where claimant fails to exercise due diligence to preserve rights or fails to allege defendant deceived or misled plaintiff about existence of cause of action); *Williams v. Giant Food*, 370 F.3d 423, 430 n.4 (2004) (same); 51 *Am. Jur. 2d Limitations of Actions* § 175 ("a plaintiff seeking equitable tolling of a statute of limitations must set forth in the complaint particularized allegations that the defendant actively misled the plaintiff, or must show that he or she exercised reasonable diligence in investigating and bringing her claims.").

[12]Specifically, the relevant provision of the Privacy Act creating a private cause of action, 5 U.S.C. § 552a(g)(1)(C), provides that "whenever an agency fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual, *the individual may bring a civil action against the agency*." (emphasis added).

In sum, all Title VII, EPA, FTCA, and Privacy Act claims against the individual defendants must be dismissed.

### III.

The analysis now moves to claims against the official defendant, Gutierrez. The government seeks dismissal of all claims against the official defendant except the Title VII claims. To reiterate, the claims analyzed here are those asserting: (i) EPA violations, (ii) various tort claims, (iii) violations of plaintiff's privacy rights, and (iv) retaliation for whistleblower activities.[13]

As noted in part II, plaintiff's EPA claims are time-barred. Therefore, those claims against the official defendant must be dismissed, as well. Moreover, as noted in part II, plaintiff's FTCA claims may not proceed against either the individual or official defendants.

Plaintiff's Privacy Act claim must also be dismissed. First, the CSRA preempts claims by federal employees under the Privacy Act when such claims allege, as here, personnel actions taken for reasons prohibited by the CSRA. *See Orsay,* 289 F.3d at 1129-31 ("because Appellant's Privacy Act claims are in fact complaints about 'prohibited personnel practices' under the CSRA, we hold that the CSRA precludes consideration of those claims."). Moreover, plaintiff has not alleged any conduct actionable under the Privacy Act; she has alleged facts suggesting workplace harassment and discrimination, nothing more.

To the degree plaintiff asserts claims under Whistleblower Protection Act[14] ("WPA"), 5

---

[13] Also, one of plaintiff's stated causes of action is that she was subjected to unspecified "prohibited personnel practices." This presumably refers to plaintiff's discrimination claims.

[14] It is unclear whether plaintiff's claim that she was "subject to retaliation for whistleblower activities" is intended to state a claim under the Whistleblower Protection Act

U.S.C. § 2302(b)(8), her claims must be dismissed for failure to state a claim and failure to exhaust, but not, as the government would have it, because jurisdiction over WPA claims lies only in the Federal Circuit. Normally, employees who claim retaliation under this Act must first report it to the Office of Special Counsel, 5 U.S.C. § 1214(a)(1)(A), and exhaust administrative remedies. Thereafter, the employee may seek redress from the Merit Systems Protection Board (MSPB), 5 U.S.C. §§ 1214(a)(3), with an appeal, if necessary, to the Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 1221(h). Yet, in a "mixed case" asserting both WPA and discrimination claims, a plaintiff properly exhausts administrative remedies either (i) by seeking administrative relief with the MSPB, or (ii) by filing a complaint with the applicable agency EEO office, and either body may resolve claims of both types. *See McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995) ("A mixed case may be filed as a complaint with the agency's EEO department or as an appeal to the MSPB, but not both."); *Quinn v. West*, 140 F. Supp. 2d 725, 733 (W.D.Tex. 2001); 29 C.F.R. § 1614.302(b). If a plaintiff picks the EEO forum to hear a mixed case, she "may file a civil discrimination case in federal court within 30 days of a final decision by the agency or after 120 days have passed without a decision, but only if no appeal to the MSPB is pursued at that time." *See McAdams v. Reno*, 64 F.3d at 1142; 5 U.S.C. § 7702(e)(1)(A); 29 C.F.R. § 1614.310(a). Thus, assuming the whistleblower claims were properly raised in the EEO administrative proceedings, timely filed here, and not appealed to the MSPB in the interim,[15] there is no venue-related or jurisdictional bar to considering them here. As

---

("WPA"), 5 U.S.C. § 2302(b)(8), or merely to allege a retaliation claim under Title VII.

[15]The WPA action is also untimely. It appears the agency did reach a final decision below, although the date of such decision does not appear in the record. If such a decision issued, suit must be filed within 30 days thereof. 29 C.F.R. § 1614.310(a). Here, the EEO

explained below, the WPA claim does not appear to have been exhausted below. Nonetheless, even assuming plaintiff properly exhausted her administrative remedies and timely filed suit, her complaint does not properly allege a whistleblower claim. Absent from her allegations are essential elements of such a claim.

The elements of a whistleblower retaliation claim are: (1) that the aggrieved employee made a disclosure protected under the WPA, and (2) that the acting official has authority to take, recommend, or approve any personnel action and the official used this authority to take, or refuse to take, a personnel action against the aggrieved employee because of the aggrieved employee's protected disclosure. *See Coons v. Sec'y, U.S. Dep't. of Treasury*, 383 F.3d 879, 888 (9th Cir. 2004) (citing *Lachance v. White*, 174 F.3d 1378, 1380 (Fed.Cir. 1999)). Protected disclosures include, *inter alia*, "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation," if such disclosure is not otherwise prohibited by law. 5 U.S.C. § 2302(b)(8)(A)(i). This provision has been interpreted to require that the circumstances of the disclosure "evidence an intent to raise an issue with a higher authority who is in a position to correct the alleged wrongdoing." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 276 (4th Cir. 2001) (citing *Willis v. Dep't of Agriculture*, 141 F.3d 1139, 1143 (Fed. Cir. 1998). Therefore, a disclosure or complaint to a

---

complaint was filed May 25, 2001, final agency decision should have been rendered by November 25, 2001 absent consent of the parties, and this action was filed in the District of Columbia on September 29, 2005. Although it is unclear from the record when the final EEO decision was rendered, it seems quite clear that this occurred in 2001 or 2002, and hence the instant WPA claim is untimely.
      The government's motion also reflects than an MSPB appeal in this matter was filed at some point, although it was dismissed as untimely. As the substance of the MSPB appeal is unknown, it is not clear on this record whether it impacts jurisdiction in the instant case.

wrongdoer is unprotected under the WPA as a matter of law.  *See Hooven-Lewis v. Caldera*, 249 F.3d at 277.

Plaintiff's complaint does not disclose or set forth any of the elements of a WPA claim, nor identify which disclosures (if any) were protected, nor which adverse personnel actions (if any) were allegedly in retaliation for the protected disclosures.  As to the protected disclosure element, plaintiff may be referring to either (i) her complaints to Le and Barlow about their treatment of plaintiff, (ii) her reports of the alleged harassment by Le to Focarino, and (iii) her reports of the alleged disparate treatment by Barlow to Goldberg.  The complaints to Le and Barlow are clearly unprotected under the WPA, as disclosures or complaints to a wrongdoer are not actionable.  *See Hooven-Lewis v. Caldera*, 249 F.3d at 277.  The complaints to Focarino and Goldberg might constitute protected disclosures in some circumstances, as both complaints were made to supervisors in a position to correct the alleged wrongdoing, and in both cases a reasonable employee could believe the matters complained of to be unlawful, though more clearly so in the case of the harassment by Le.  And plaintiff has alleged adverse personnel actions, such as delayed pay grade increases, denial of training opportunities, unfair evaluations, and diminished bonuses.[16]  Yet, the WPA claim fails, as plaintiff has failed to allege a causal connection between any adverse personnel actions and the disclosures.  Moreover, the record does not disclose that plaintiff has administratively exhausted the WPA claim; while she raised the Title VII discrimination claims below, she did not allege that they stated a WPA violation and

---

[16]Although not pertinent on a motion to dismiss, the summary judgment record reflects that plaintiff suffered no adverse employment action, as she received evaluations from Barlow that were uniformly positive and that she was promoted through the "signatory program" (wherein examiners gradually attain authority to take final actions on patent applications) without any delay.

the EEO proceedings therefore did not determine if the WPA was violated. The WPA action must therefore be dismissed as both unexhausted and untimely.

In sum, all of plaintiffs' tort claims, Equal Pay Act claims, WPA claims, and Privacy Act claims must be dismissed.

### IV. Title VII Claims

While the government does not move to dismiss all plaintiff's Title VII claims, it does seek to limit the scope of further proceedings to those specific Title VII claims plaintiff administratively exhausted. This motion is appropriately granted, as in Title VII matters "the EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *See Bryant v. Bell Atlantic*, 288 F.3d 124, 132 (4th Cir. 2002). *See also id.* at 133 ("[B]ecause the scope of Bryant's complaint exceeds the limits set by the allegations of Bryant's administrative complaint, we cannot analyze the merits of Bryant's retaliation or color and sex discrimination claims.") Therefore, it is necessary to determine the scope of the administrative proceedings. The EEO investigation framed the issues as follows:

> complainant . . . alleged that because of her race (African-American), sex (female), and color (black) she has been subject to an ongoing pattern of discrimination by her supervisor, John Barlow, who has repeatedly treated her differently than white males in her art unit, and has hindered her preparation for promotion to GS-14, the most recent event being March 15, 2001, when he counseled her for using the wrong procedures to transfer her cases to other examiners.

In particular, as the government's motion notes, plaintiff failed to exhaust her administrative remedies regarding the alleged solicitations by Le. Because these claims were not considered administratively, they may not properly be considered here. The surviving claims, therefore, are those noted in the EEO complaint above; namely those alleging disparate treatment by Barlow on

the basis of race, sex, and in retaliation for protected EEO activity, and alleging that a hostile work environment resulted from Barlow's conduct.[17]

One last point merits mention.  Plaintiff has essentially alleged facts suggesting discrimination in the workplace, and then attached the labels of numerous irrelevant causes of action, such as the Privacy Act and various plainly inapplicable torts (such as abuse of process and tortuous interference with contract), to see if any survive dismissal.  This "kitchen-sink" approach to pleading is strongly disfavored.  *See Blizzard v. Exel Logistics North America, Inc.*, 2005 WL 3078175 at *5 n.4 (D.N.J. 2005) (noting that such an approach is "not helpful to the resources of the Court or the other attorneys.").

For the above-stated reasons, the government's motion to dismiss is **GRANTED.**

Further proceedings in this matter are **LIMITED** to the claims of (i) disparate treatment by Barlow based on race, sex, and color, and (ii) hostile work environment.

The Clerk is directed to send a copy of this Order to counsel of record and to the plaintiff.


December 15, 2006　　　　　　　　　　　　　　　　　　___/s_____
Alexandria, Virginia　　　　　　　　　　　　　　　　　T. S. Ellis, III
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[17]The government's motion for summary judgment on these claims has been fully briefed and awaits disposition.